**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Edward Ivy,<br><br>                Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>                Defendant. | No. CV-19-05176-PHX-JJT<br><br>**ORDER** |

At issue is the denial of Plaintiff John Edward Ivy's Application for Supplemental Security Income by the Social Security Administration ("SSA") under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 12, "Pl. Br."), Defendant Social Security Administration Commissioner's Response Brief (Doc. 13, "Def. Br."), and Plaintiff's Reply Brief (Doc. 14, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 10, "R.") and now affirms the Administrative Law Judge's decision (R. at 10–20) as upheld by the Appeals Council (R. at 1–6).

**I.    BACKGROUND**

Plaintiff filed an Application for Supplemental Security Income on October 14, 2016 for a period of disability beginning on October 26, 2016.[1] (R. at 10, 30.) His claim

---

[1] Plaintiff originally alleged his disability began February 1, 2013, but amended the disability onset date to October 26, 2016. (R. at 10, 221.)

was denied initially on February 8, 2017, and upon reconsideration on March 8, 2017. (R. at 10.) On July 31, 2018, Plaintiff appeared at a hearing before the ALJ. (R. at 10.) On October 15, 2018, the ALJ denied Plaintiff's Application, and on August 13, 2019, the Appeals Council denied Plaintiff's Request for Review and adopted the ALJ's decision as the agency's final decision. (R. at 1–3, 10–20.)

The Court has reviewed the medical evidence in its entirety and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: osteoarthritis of the right dominant wrist and status-post remote fracture. (R. at 12.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled from the alleged disability onset-date through the date of the decision. (R. at 10.) The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 14.) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] has the [RFC] to perform light work as defined in 20 CFR 416.967(b) except he could lift up to 20 pounds occasionally and 10 pounds frequently with use of both upper extremities. He could lift up to 10 pounds occasionally and five pounds frequently with the right dominant upper extremity. He should never crawl or climb ladders, ropes, or scaffolds. Handling with the dominant right upper extremity would be limited to occasional and feeling would be limited to frequent rather than constant. He should avoid unprotected heights and hazardous machinery. He should avoid concentrated exposure to vibration and extreme cold. Pushing and pulling with the dominant right upper extremity would be limited to the weight for lifting, but could only be performed on a frequent rather than constant basis.

(R. at 15.) Accordingly, the ALJ found that Plaintiff can perform jobs that exist in significant numbers in the national economy. (R. at 19.)

. . . .

. . . .

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy

based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

### III.   ANALYSIS

Plaintiff raises two issues for the Court's consideration. First, Plaintiff argues the ALJ incorrectly weighed the evidence of Dr. James O'Brien, M.D., in rejecting his opinion that Plaintiff would miss six or more days of work a month. (Pl. Br. at 4–8.) Second, Plaintiff argues the ALJ committed legal error by relying on the Vocational Expert's ("VE") testimony because, based on the testimony, the ALJ should have found Plaintiff is limited to sedentary exertion. (Pl. Br. at 8–12.) The Court rejects Plaintiff's arguments for the following reasons.

### A.   The ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting Dr. O'Brien's medical opinion.

The ALJ properly gave little weight to Dr. O'Brien's opinion that Plaintiff would miss six or more days of work a month because there was no medical evidence to support this opinion and it was inconsistent with Plaintiff's activities of daily living ("ADLs"). (R. at 18.) An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester v. Chater*, 81 F. 3d 821, 830–31 (9th Cir. 1996)). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

In April 2016, Dr. O'Brien completed a medical source statement in which he opined that Plaintiff would be unable to handle, finger, and feel at an average speed. (R. at 18, 330.) Dr. O'Brien opined Plaintiff could work an eight-hour workday with occasional use of the right upper extremity, but not frequent or constant use. (R. at 18, 331.) Dr. O'Brien further opined that there would be no limitation with Plaintiff using both

hands. (R. at 18, 331.) Additionally, Dr. O'Brien opined that Plaintiff would need to miss six or more days of work per month, which the ALJ gave little weight. (R. at 18, 332.) Plaintiff met with Dr. O'Brien again in October 2016. (R. at 16, 339.) Dr. O'Brien found that Plaintiff had limited range of motion in his right wrist, but he had the ability to make a full fist without pain. (R. at 16, 340.) Dr. O'Brien diagnosed Plaintiff with right wrist osteoarthritis. (R. at 17, 340–41.) Plaintiff did not want to get surgery and declined an injection because "his pain is not bad." (R. at 17, 341.) Plaintiff went back to Dr. O'Brien in October 2017 and did not complain about wrist pain. (R. at 17, 506–08.)

Here, the facts and medical evidence support the ALJ's decision to discount Dr. O'Brien's opinion that Plaintiff would need to miss six or more days of work a month. First, Dr. O'Brien's medical opinion is not in line with other medical evidence presented. The ALJ assigned substantial weight to the opinions of Dr. Lynne Jahnke, M.D., who testified that Dr. O'Brien's opinion was not reasonable. (R. at 17, 37.) Specifically, Dr. Jahnke stated that "[t]here is no reason with a wrist that doesn't hurt so bad that [Plaintiff] doesn't need an injection that causes him to miss that many days of work." (R. at 17, 37.) Dr. Jahnke further stated that "there is no way the wrist should cause any missed days of work." (R. at 17, 38.) In arriving at this conclusion, Dr. Jahnke reviewed Plaintiff's wrist x-rays. (R. at 17, 38.) She stated that the x-ray showed no severe destruction of the joint. (R. at 17, 38.) She opined that because the x-ray showed no destruction of the joint and because Plaintiff declined an injection because the pain was not bad, there should be no reason he would need to miss six or more days of a work a month. (R. at 17, 38.)

Indeed, Dr. O'Brien's own findings do not support the finding that Plaintiff would need to miss six or more days of work a month. When Dr. O'Brien first met Plaintiff in October 2016, Plaintiff could make a full fist without pain. (R. at 16, 340.) Plaintiff also declined injections because that pain was not that bad, and he declined surgical intervention. (R. at 17, 341.) *See Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) (indicating that a claimant's pursuit of only conservative treatment is a proper reason to

discount his testimony regarding his impairments). When Plaintiff met with Dr. O'Brien in October 2017, he made no complaints about his wrist. (R. at 17, 6F/1.)

The ALJ also properly relied on Plaintiff's ADLs in giving little weight to Dr. O'Brien's opinion. Plaintiff completes yard work despite his difficulty starting the mower with his left hand, and he has continued to work as a mechanic. (R. at 16, 232–34.) Plaintiff also stated at the hearing that the last time he had worked was a few days prior when he attempted to put an engine in a car. (R. at 16, 40.) Plaintiff stated that he attempts to work as a mechanic and works on average about 24 hours a week. (R. at 16, 41, 45.) Significantly, Plaintiff testified that he does not like going to the doctor, and he does not like following doctors' orders. (R. at 16, 48.) Plaintiff is learning to use a computer and "[i]t's not that bad" (R. at 55.) It bothers him to rest his hand over the mouse. (R. at 55.) Plaintiff said he could use a cash register. (R. at 59.) Thus, the ALJ properly concluded that these activities are inconsistent with Plaintiff's allegations and Dr. O'Brien's opinion.

Plaintiff argues the ALJ's statement that the lifting and carrying restrictions are inconsistent with the objective evidence and the report of Claudia von Hammerstein, a physical therapist, but does not explain anything beyond this conclusion. (R. at 18; Pl. Br. at 7.) Ms. Von Hammerstein opined that Plaintiff could lift between 21 and 35 pounds occasionally and 20 pounds or less frequently. (R. at 17, 325.) She opined that Plaintiff was not restricted in reaching, twisting, bending, crouching, kneeling, sittings, standing, or walking. (R. at 17, 325.) The ALJ gave these opinions great weight because they were consistent with the longitudinal record and with Dr. Jahnke's findings. (R. at 17.) The ALJ found that Plaintiff could lift to 20 pounds occasionally and 10 pounds frequently. (R. at 15.) This finding is consistent with Ms. von Hammerstein's opinion.

Additionally, Plaintiff argues that ALJ's assertion that Dr. O'Brien's opinion is not in line with Plaintiff's ADLs fails as a matter of law because the ALJ did not analyze Plaintiff's ADLs. (Pl. Br. at 6–7.) Plaintiff also contends the ALJ's statement that Dr. O'Brien's opinion is inconsistent with Plaintiff's self-employment activity is not supported because it does have in-depth explanation. (Pl. Br. at 7.) Though the ALJ did not always

- 6 -

directly link each piece of cited evidence to a particular statement made by Plaintiff, the ALJ has nonetheless cited sufficient evidence in the record and statements by Plaintiff to enable this Court to reasonably discern his path and meaningfully determine that his conclusions are indeed supported by substantial evidence. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (reiterating that ALJs may explain their decisions with unideal clarity so long as their reasoning is reasonably discernible). Thus, the Court finds the ALJ's reasoning was specific and legitimate and was supported by substantial evidence in the record.

### B.   The ALJ properly evaluated and applied the testimony of the Vocational Expert.

Plaintiff argues the ALJ's presumption that Plaintiff would not be required to use his dominant hand in the hypothetical posed to the VE is a determinative issue, and based on the VE's responses, the ALJ should have found sedentary exertion was established. (Pl. Br. at 9–10.) Hypothetical questions posed to a vocational expert must contain all a claimant's limitations that are supported by substantial evidence. *Magallanes*, 881 F.2d at 756. Moreover, an ALJ must include only those limitations that are supported by substantial evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). The testimony of a vocational expert "is valuable only to the extent that it is supported by medical evidence." *Magallanes*, 881 F.2d at 756 (quoting *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982)).

The ALJ examined Kimberly Mullinax, a VE, at the hearing. (R. at 61–67.) The ALJ posed a hypothetical of a man with Plaintiff's age, education, and background who can lift 20 pounds occasionally and 10 pounds frequently with both upper extremities and no limitations to sitting, standing, or walking, who could never climb ladders, ropes, or scaffolds, and can never crawl. (R. at 63–64.) The ALJ added that handling with the right dominant upper extremity would be limited to occasional and feeling with the right dominant upper extremity would be limited to frequent rather than constant. (R. at 64.) The VE testified that the hypothetical man could not perform Plaintiff's past work, but could

perform work as a counter clerk, furniture rental consultant, or bakery worker on a conveyor line. (R. at 65–66.) The ALJ then modified the hypothetical to the same circumstances but changed that the individual could lift 10 pounds occasionally and five pounds frequently with his right hand and lift 20 pounds occasionally and 10 pounds frequently with his left hand. (R. at 66.) The VE found there would be no sedentary, unskilled occupations available for this hypothetical man. (R. at 66.) The ALJ asked the VE whether jobs exist that the Plaintiff could perform, considering his age, education, work experience, and RFC. (R. at 20, 65.) The VE testified that Plaintiff would be able to work as a counter clerk, furniture rental consultant, or bakery worker in a conveyor line. (R. at 20, 65–66.) The VE further described that none of these occupations would require more than occasionally handling with the right hand. (R. at 66.) The ALJ found the VE's answers were consistent with information in the Dictionary of Occupational Titles (DOT), and that a finding of not disabled was appropriate. (R. at 20.)

Plaintiff argues the ALJ erred in relying on the VE's testimony because there is a discrepancy between the DOT and the VE's testimony regarding lifting and requirements of light work and that sedentary exertion was established. (Pl. Br. at 8–13.) Specifically, Plaintiff takes issue with the fact that the VE did not specify whether the occupations the VE suggested Plaintiff could perform would require lifting with both hands or one hand. (Pl. Br. at 10–11.) Plaintiff argues the facts here are analogous to *Lamear v. Berryhill*, 865 F.3d 1201 (9th Cir. 2017), where the plaintiff had difficulty handling, fingering, and feeling with the left hand, and the VE suggested plaintiff could work jobs where workers frequently have to handle, finger, and reach. *Id.* at 1205–06. There, the Ninth Circuit found the ALJ should have asked further questions so the VE could explain this discrepancy. *Id.* at 1206. The Court disagrees with Plaintiff and does not find this case analogous.

Here, the ALJ posed two hypotheticals with the only difference being whether the hypothetical man was lifting with one hand or with both hands. The VE testified that under the first hypothetical where the hypothetical man could use both hands, several occupations would be available including counter clerk, furniture rental consultant, and bakery worker,

conveyor line. (R. at 20, 65–66.) None of these occupations as defined under the DOT require lifting or carrying. *Dictionary, 249.366-010 (Counter Clerk), 249.357-018, Furniture Rental Consultant, and 524.687-022, Bakery Worker, Conveyor Line*. Plaintiff's argument rests on the assumption that the VE's recommended occupations conflict with the hypotheticals presented at the hearing, but in fact they do not. The VE presented occupations that do not require Plaintiff to lift or carry any weight at all, which does not create any discrepancy between lifting weight with one or both hands. Because none of these occupations require lifting or carrying, the Court fails to see any discrepancy between the VE's testimony and the DOT definitions. The ALJ did not err because "there was no apparent or obvious conflict." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016).

## IV. CONCLUSION

Substantial evidence supports the ALJ's nondisability determination. The ALJ provided sufficient reasons supported by substantial evidence in considering the medical opinion of Dr. O'Brien and in evaluating the testimony of the VE.

**IT IS THEREFORE ORDERED** affirming the October 15, 2018 decision of the Administrative Law Judge (R. at 10–20), as upheld by the Appeals Council on August 13, 2019 (R. at 1–3).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 19th day of October, 2020.

_____
Honorable John J. Tuchi
United States District Judge